## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | |
| **IN RE APPLICATION OF RH2** | : | Civil Action No. 23-4025(GC)(JTQ) |
| **PARTICIPAES SOCIETRIAS LTDA** | : | |
| **UNDER 28 U.S.C. § 1782** | : | **MEMORANDUM OPINON** |
| | : | **& ORDER** |
| | : | |

Respondents Koliver & Co. LLC ("KCO") and Edward Koliver (together, "Respondents") seek an Order quashing the subpoenas served on them by Petitioner RH2 Participações Societárias LTDA ("Petitioner"). The Court has reviewed the parties' submissions, both in support of and in opposition to the motion, and considers the same without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1(b). For the reasons below, Respondents' motion is denied.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On July 27, 2023, Petitioner filed an *ex parte* application for discovery pursuant to 28 U.S.C. § 1782 in aid of an ongoing civil lawsuit in Brazil. ECF No. 1. The application sought leave to serve three subpoenas in this District—one each to Respondents Edward Koliver and KCO seeking the production of documents, and one for the deposition of Edward Koliver. Koliver, who resides in New Jersey, is the owner and Managing Partner of KCO. ECF No. 7-2 at ¶¶ 2-3. KCO is a New Jersey partnership registered to do business in Brazil. *Id.* at ¶ 8.

Petitioner is a co-defendant in the Brazilian lawsuit, which was brought by KCO and its Brazilian subsidiary, Koliver Consultoria e Participações Ltda. ("KCP").

KCO and KCP allege in that suit they are owed from Petitioner and others[1] a "success fee" of $1.25 million for work performed in connection with a failed business transaction. ECF No. 7-1 at 3-4. The transaction at issue was the attempted sale of several family-owned Brazilian companies of which Petitioner, an entity owned by Ramon Henrich, is one-third owner. The sale was never consummated.

The claims of the plaintiffs in the Brazilian suit arise from a Services Agreement executed in February 2020 when KCO was retained by Ramon Henrich and his brothers, Ronie and Renan, to assist in selling a group of companies referred to collectively as the Multi Armazens Group. ECF No. 7-2 at ¶ 10.  In November 2020, after Ronie decided to withdraw his interests from the sale, KCO entered into an Addendum to the Services Agreement with Renan and Ramon to sell their two-thirds interest in the Multi Armazens Group, which at that time, they owned mostly through an intermediate holding company, Prodin Participações Ltda. ECF No. 7-1 at 5.

KCO asserts in the Brazilian action that it performed its obligations under the Services Agreement, and, therefore, it is entitled to payment of the success fee. Petitioner, on the other hand, contends that KCO failed to earn a success fee because it improperly excluded Petitioner and Ramon from negotiations with the potential purchaser, Multilog S/A, and, as a result, KCO negotiated an unauthorized deal that never resulted in a signed purchase agreement. According to Petitioner, it is seeking discovery under § 1782 "to (1) challenge KCO's factual claims that it earned a 'success

---

[1] The other defendants in the Brazilian lawsuit are not involved in present discovery dispute.

fee' under the specific terms and conditions of the parties' agreement and (2) require KCO to explain how it found itself offering . . . a modified deal that the parties' agreement never authorized." ECF No. 1-2 at 2.

The subpoenas seek the following documents from KCO and Mr. Koliver for the period October 1, 2019, to the present:

> 1. All Communications with Multilog S/A or anyone acting on its behalf relating to the Multi Armazens Group and/or any member of the Henrich family.
>
> 2. All Communications to which [KCO or Mr. Koliver] and Renan Henrich are parties.
>
> 3. All Documents relating to any proposed sale of any ownership interest in the Multi Armazens Group.
>
> 4. All Documents relating to Ramon Henrich's and/or Applicant's consent or lack of consent to any proposed purchase or investment in the Multi Armazens Group.
>
> 5. All Documents relating to Prodin Participações Ltda. or any real property or other asset in which it has or had a direct or indirect ownership interest.
>
> 6. All Documents relating to any draft or executed contract or agreement for the sale of any ownership interest in the Multi Armazens Group and/or Prodin Participações Ltda.

ECF Nos. 1-6, 1-7. Petitioner also seeks to depose Mr. Koliver concerning those topics. ECF No. 1-8.

On October 26, 2024, the Hon. Douglas E. Arpert, U.S.M.J.,[2] granted the *ex parte* § 1782 application, and Petitioner was permitted to issue and serve the

---

[2] Judge Arpert has since retired.

requested subpoenas. ECF No. 6. This motion to quash the subpoenas followed. ECF No. 7.

## II. LEGAL STANDARD

Under 28 U.S.C. § 1782, a district court may grant applications for discovery to be used in a foreign proceeding. This statute provides in relevant part that:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, …. The order may be made … upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

28 U.S.C. § 1782(a). The purpose of § 1782 is "to facilitate the conduct of litigation in foreign tribunals, improve international cooperation in litigation, and put the United States into the leadership position among world nations in this respect." *In re Biomet Orthopaedics Switzerland GmBh*, 742 F. App'x 690, 695 (3d Cir. 2018).

Recognizing "Congress's goal of providing equitable and efficacious discovery procedures," the Third Circuit has directed that "district courts should treat relevant discovery materials sought pursuant to § 1782 as discoverable unless the party opposing the application can demonstrate facts sufficient to justify the denial of the application." *In re Bayer AG*, 146 F.3d 188, 195 (3d Cir. 1998); *see also Bayer AG v. Betachem, Inc.*, 173 F.3d 188 (3d Cir. 1999) ("The party opposing discovery has the 'burden of demonstrating offense to the foreign jurisdiction, or any other facts warranting the denial of a particular application'"). Nevertheless, whether and to what extent to honor a § 1782 request is committed to the sound discretion of the

4

district court, as the Supreme Court has held that "a district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004).

When considering an application under § 1782, a court must first decide whether certain statutory requirements, described as "modest prima facie elements," are met. *Biomet*, 742 F. App'x at 195 (quoting *In re Bayer AG*, 146 F.3d at 195). These are: "(1) that the application seeks discovery from a person or entity who is a resident or can be found in the district in which the application is filed, (2) that discovery is for use in a proceeding in a foreign tribunal, and (3) that the application is made by a foreign or international tribunal or by an interested person." *In re California State Teachers' Ret. Sys.*, 2017 WL 1246349, at *1 (D.N.J. Apr. 3, 2017) (citing *Kulzer v. Esschem*, 390 F. App'x 88, 91 (3d Cir. 2010)).

If the threshold statutory requirements are met, a court may then consider whether to exercise its discretion to grant the application. The Supreme Court has set forth four factors for the Court to evaluate that are relevant to this determination:

> (1) whether the evidence sought is within the foreign tribunal's jurisdictional reach, and thus accessible absent section 1782 aid; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the request conceals an attempt to circumvent foreign proof gathering restrictions or other policies of a foreign country or the United States; (4) whether the subpoena contains unduly intrusive or burdensome requests.

*In re O'Keeffe*, 646 F. App'x 263, 266 (3d Cir. 2016) (citing *Intel*, 542 U.S. at 264-65).

5

### III.   ANALYSIS

The parties do not dispute that the threshold statutory requirements have been met. The Court, therefore, addresses the discretionary factors under *Intel*.

A. First *Intel* Factor

The first *Intel* factor, namely, "whether the evidence sought is within the foreign tribunal's jurisdictional reach, and thus accessible absent section 1782 aid," *In re O'Keeffe*, 646 F. App'x at 266, focuses on whether "the person from whom discovery is sought is a participant in the foreign proceeding," *Intel Corp.*, 542 U.S. at 264. The Supreme Court has noted that "when the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad" because "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence." *Id.*

Respondents first contend that this factor favors quashing the subpoenas because KCO is a party to the Brazilian litigation "and is inarguably subject to the jurisdiction of the Brazilian court." ECF No. 7-1 at 10. Next, they contend that Koliver, as the legal representative of KCO, would be subject to all discovery involving KCO in Brazil. Respondents point out that Koliver has twice appeared for hearings in Brazil, and they claim that this demonstrates that Koliver is accessible in that country. In fact, Koliver has declared under oath that he would "abide by all orders issued by the Brazilian court," presumably including all discovery orders. ECF No.

16-2 ¶¶ 7-8. Specifically, as to the documents sought by the subpoenas, Respondents argue that because KCO exists and operates in Brazil and because all of Koliver's communications were with persons and entities in Brazil, all relevant documents and communications surrounding the underlying transaction would also be available from persons and entities in Brazil.[3] *Id.* at 11; ECF 16 at 6-7.

Petitioner, on the other hand, argues that that this first factor supports permitting the discovery because the material sought is out of the foreign tribunal's reach. First, Petitioner asserts that because Mr. Koliver is not a party to the underlying litigation, the Brazilian court has no jurisdiction to order his deposition. ECF No. 1-9 at ¶ 33. Second, Petitioner provides declarations from Brazilian counsel stating that even though KCO is a party to the litigation, the Brazilian court lacks the ability under its rules to control and order production of the requested documents because the materials sought are located in the United States. ECF No. 1-9 at ¶ 32 (explaining that evidence located outside of Brazil would need to be obtained through a letter rogatory); *see also* ECF No. 12-2 at ¶ 11 ("Brazilian judges do not have full authority or practical ability to compel a foreign party and foreign non-parties to produce documents located outside of the Brazilian territory, since the apprehension of such documents by judicial order would be outside their jurisdiction.").

---

[3] In addition to their briefing, Respondents filed a letter arguing that a March 26, 2024 Order entered by the Brazilian court relating to a bond requirement and standing to sue under Brazilian law further supports their motion, particularly as to the first *Intel* factor. The Court is not persuaded that the Brazilian court's ruling furthers Respondents' position.

In their own declaration from Brazilian counsel, Respondents appear to concur that a Brazilian judge does not have the authority to directly compel the production of materials outside of Brazil. *See* ECF No. 16-1 at ¶ 21 (stating that if the Brazilian court grants request for production of the materials, and Respondents refuse to comply, the Brazilian court "will lack the power to directly enforce such an order outside Brazilian territory"). However, Respondents argue that the "contention that the Brazilian Court would not have jurisdiction over documents stored in the U.S. . . . would be easily overcome through a foreign judicial cooperation request, such as by letters rogatory from the Brazilian Judge . . . requesting the assistance of this New Jersey District Court. . . ." ECF No. 7-4 at ¶ 42. Petitioner responds that the fact that the Brazilian court would need to seek U.S. assistance to obtain the documents sought in the subpoenas only underscores the fact that the discovery is outside of the reach of the foreign tribunal.

Nevertheless, it does not appear that the Brazilian court is without recourse with respect to a party failing to cooperate in discovery. Both parties' Brazilian counsel state that a court in Brazil may, for example, order that a negative inference be drawn from a parties' wrongful refusal to produce discovery in response to an order from the Brazilian court. ECF No. 12-1 at ¶ 24 (stating that the Brazilian court "has the authority to draw adverse inferences against a party failing to comply with a document production order"); and No. 16-1 at ¶ 19 (stating that "if the parties to the Brazilian Lawsuit illegitimately refuse to produce any document that they are ordered to, a negative inference could be drawn").

With respect to Koliver, the Court finds that the first *Intel* factor weighs in favor of permitting the discovery. It is undisputed that Koliver is not a party to the foreign proceeding. He is a U.S. resident and outside the authority of the foreign court. Respondents' assurances and Koliver's promises that he will comply with any order of the Brazilian court do not alter that. Nor is the Court moved by Respondents' argument that the discovery sought from Koliver may be obtained from various persons and entities located in Brazil.  Indeed, "the mere possibility that some documents may be obtainable in the foreign jurisdiction does not, in and of itself, negate any need for assistance under section 1782." *California State Teachers Ret. Sys. v. Novo Nordisk, Inc.*, 2020 WL 6336199, at *8 (D.N.J. Oct. 29, 2020).

KCO stands on somewhat different footing than Koliver. It is a party to the proceeding in Brazil and, as such, falls under the jurisdiction of the Brazilian Court. As one court has observed, the issue of whether the foreign tribunal has the necessary authority over an entity most often "should be satisfied by a showing that the entity was an actual party to the foreign litigation." *In re Application for Discovery for Use in Foreign Proceeding*,  2019 WL 168828, at *6 (D.N.J. Jan. 10, 2019) (citing *Intel*, 542 U.S. at 264). Even if the Brazilian's court authority does not extend across the borders and into the United States, that court nevertheless retains authority and control over the parties before it. KCO is such a party. The Court, therefore, finds this factor to be neutral with respect to KCO.

B. Second *Intel* Factor

The second factor under *Intel* examines "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *In re O'Keeffe*, 646 F. App'x at 266. "[W]here a foreign tribunal opposes such aid, granting discovery would undermine the spirit of comity underlying § 1782 by discouraging foreign tribunals from heeding similar sovereignty concerns posited by our governmental authorities to foreign courts." *In re Application for Discovery for Use in Foreign Proceeding*, 2019 WL 168828, at *8 (internal quotations omitted). The proper inquiry for this second factor is not "whether particular evidence would be admissible in a foreign court[,] . . . the inquiry is more generally the receptivity to 'U.S. federal-court judicial assistance.'" *In re O'Keeffe*, 646 F. App'x at 267 (quoting *Intel*, 542 U.S. at 264).

The Third Circuit has held that "the parties opposing discovery under section 1782 . . . bear the burden of proof on the receptiveness issue." *In re Chevron Corp.*, 633 F.3d 153, 162-63 (3d Cir. 2011). Finding persuasive the Second Circuit's decision in *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995) (cited with approval in *In re O'Keeffe*, 646 F. App'x at 266), many district courts within this circuit have required from the party opposing discovery "authoritative proof" that the foreign court would reject evidence obtained with the aid of § 1782. *See*, *e.g.*, *In re FourWorld Cap. Mgmt. LLC*, 2024 WL 1637400, at *8 (D. Del. Apr. 16, 2024); *Matter of Rosa Carolina Germano Dos Santos*, 2023 WL 4993673, at *9 (D.N.J. Aug. 4, 2023); *In re*

10

*Iraq Telecom Ltd.*, 2021 WL 5177603, at *4 (E.D. Pa. Nov. 5, 2021). Examples of such authoritative proof would include "a forum country's judicial, executive or legislative declarations that specifically address the use of evidence gathered under foreign procedures.'" *In re Application for Discovery for Use in Foreign Proceeding*, 2019 WL 168828, at *8 (citing *Euromepa*, 51 F.3d at 1099-1100).

Here, the Court finds the existence of such authoritative proof lacking. Respondents thinly argue that the discovery sought "contravenes Brazilian law" and that Brazilian courts are not receptive to U.S. federal-court assistance. ECF No. 12 at 12-14.  The Court is unmoved.  As an initial matter, Respondents have not sustained their burden to identify either a case or any other form of authoritative proof demonstrating that a Brazilian court or authority would be unreceptive to U.S. judicial assistance. Indeed, scores of cases both inside and outside of this Circuit generally, if not exclusively, have found the opposite to be true. *See*, *e.g.*, *In Re Ibuna Credito Gestao de Recursos Ltda.*, No. 24-13, 2024 WL 1077559, at *9 (S.D.N.Y. Feb. 14, 2024) (collecting cases). And even the cases cited by Respondents that have denied § 1782 applications (in whole or in part) did *not hold* that Brazil would be unreceptive to U.S. assistance. *See*, *e.g.*, *Associacao dos Profissionais dos Correios v. Bank of New York Melon Corp.*, 2022 WL 4955312, at *7 (S.D.N.Y. Oct. 4, 2022) (finding *Intel's* "second factor—the nature and character of the foreign tribunal and proceedings before it, as well as the tribunal's receptivity to U.S. federal court judicial assistance—weighs in favor of the application"); *In re Bureau Veritas*, 2022 U.S. Dist. LEXIS 147551, at *13 (N.D. Cal. Aug. 17, 2022) (finding "there is nothing to suggest

that the Brazilian civil or criminal courts would reject evidence obtained with U.S.
federal-court assistance").

The parties try to cloud this seemingly straightforward issue with conflicting
declarations from Brazilian counsel, each of whom attempt to provide the Court with
their interpretation of Brazilian law.  The Court need not and will not attempt to
engage in an analysis of foreign law to determine which counsel has the better of the
argument.  *See In re Application for Discovery for Use in Foreign Proceeding*, 2019
WL 168828, at *10 (noting that "'district courts are discouraged from engaging in the
interpretation of foreign law when conducting a Section 1782 analysis,' at least in
cases where the evidence was 'conflicting' and not the subject of
'authoritative proof.'") (quoting *O'Keeffe*, 646 F. App'x at 267).  That is because the
competing declarations do "*not* constitute the kind of authoritative proof that would
permit the court to rule without enmeshing itself in complex determinations of
foreign law."  *Id.* at 10 (emphasis added). ("conflicting expert affidavits, lack of
authoritative evidence, and the existence of a reciprocal agreement, the Hague
Convention, that implies receptivity")

In the end, the Third Circuit has warned district courts against wading into an
interpretation of foreign rules on discovery, and the Court declines to do so here. It is
sufficient that Respondents have not provided authoritative proof that Brazil would
not be receptive to judicial assistance here. Indeed, Brazil being a signatory to the
Hague Convention would imply otherwise.  *See id.* (finding that "the existence of a

reciprocal agreement, the Hague Convention, . . . implies receptivity").  For these reasons, the second factor weighs in favor of Petitioner.

### C. Third *Intel* Factor

The third *Intel* factor considers whether the § 1782 applicant is trying to circumvent "foreign proof gathering restrictions or other policies of a foreign country or the United States." *In re California State Teachers' Ret. Sys.*, 2017 WL 1246349, at *3 (quoting *O'Keeffe*, 646 F. App'x at 266). Respondents argue that this third factor weighs "strongly against" Petitioners because "the entire purpose of the Application is to circumvent limited and restrictive Brazilian discovery procedures." ECF No. 7-1 at 14. Specifically, Respondents contend that (1) the documents sought by Petitioner would not be discoverable in Brazil and, therefore, Petitioner's intent to circumvent is "plainly evidence[d]" by its failure to first seek the discovery in Brazil; and (2) all testimonial evidence is taken before a judge in Brazil, which is a guaranteed right under the Brazilian constitution. ECF No. 16 at 1.

The Court finds Respondents' arguments misplaced. First, the law is clear that an applicant is not required to seek discovery in the foreign forum before filing a § 1782 application. *See, e.g.*, *In re O'Keeffe*, 646 F. App'x at 268 ("We have never held that an applicant must seek discovery relief in the foreign forum first."); *California State Teachers' Ret. Sys.*, 2020 WL 6336199, at *9 (noting that "there is no requirement under § 1782(a) that a petitioner previously attempted to obtain the discovery sought in the foreign jurisdiction before filing its § 1782 application").

13

Second, that the discovery may be unobtainable in the foreign forum is not a basis to deny an application under § 1782. *See In re Chevron Corp.*, 633 F.3d at 163 ("[A]s the Court made clear in *Intel,* there is no requirement that the material be discoverable in the foreign country for it to be discoverable pursuant to a section 1782 request in the United States."). As one court has noted:

> A party cannot show circumvention of foreign proof-gathering rules simply by showing that the foreign jurisdiction does not allow for discovery. As the Third Circuit has stated, "[i]f district courts were free to refuse discovery based upon its unavailability in a foreign court …§ 1782 would be irrelevant to much international litigation, frustrating its underlying purposes." *In re Bayer AG*, 146 F. 3d 188, 195 (3d Cir. 1998) (internal citations omitted). The entire point of § 1782 is to "assist foreign tribunals in obtaining relevant information that the tribunals may find useful but, for reasons having no bearing on international comity, they cannot obtain under their own laws." *Intel*, 542 U.S. at 262.

*In re California State Teachers' Ret. Sys.*, 2017 WL 1246349, at *3. Indeed, the Third Circuit has observed that a foreign jurisdiction's failure to "offer a mechanism for general pretrial discovery comparable to that obtainable in the United States" was arguably part of "a textbook predicate for a successful § 1782 petition." *Kulzer*, 390 F. App'x at 92.

"At first blush, [the instruction that a court should not deny discovery under § 1782 solely because such discovery is unavailable in the foreign court] might seem difficult to reconcile with the instruction under the third *Intel* factor that the court consider whether the Section 1782 request 'conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country.'" *In re Application of Salem*, 2024 WL 3026670, at *13 (S.D.N.Y. June 17, 2024). However, the Second

14

Circuit has explained that, when properly understood, there is no inconsistency. *See*

*Mees v. Buiter*, 793 F.3d 291, 303 n.3 (2d Cir. 2015). The *Mees* court stated:

> That a country does not enable broad discovery within a litigation does not mean that it has a policy that restricts parties from obtaining evidence through other lawful means. "Proof-gathering restrictions" are best understood as rules akin to privileges that *prohibit* the acquisition or use of certain materials, rather than as rules that *fail to facilitate* investigation of claims by empowering parties to require their adversarial and non-party witnesses to provide information.

*Id.* (internal quotations and citations omitted) (emphasis in original). Thus, for a

court to find circumvention, the party opposing the application must show "something

[that] indicate[s] bad faith or gamesmanship that undercuts Section 1782's goals of

comity and efficiency." *Matter of Rosa Carolina Germano Dos Santos*, 2023 WL

4993673, at *10; *see also Kulzer*, 390 F. App'x at 92 (stating that a court is to "consider

whether the litigant's motives are tainted by a surreptitious effort to bypass foreign

discovery rules").

The Court finds that the instant application presents neither bad faith nor

gamesmanship. *First*, while the Petitioner and Respondents try to add much about

the strength of the petition, they do so through the conflicting declarations of

Brazilian legal experts. But, as noted earlier, the Court will not wade into the

disagreement between the experts regarding the construction of Brazilian law. *See*

*Biomet Orthopaedics*, 742 F. App'x at 697 ("Surveying [foreign] law to determine a

particular document's admissibility or probative value is exactly the kind of

'speculative foray[] into legal territories unfamiliar to federal judges,' that would be

'in tension' with § 1782.").

Second, Respondents' position that this factor weighs against granting the petition focuses on the alleged lack of discovery procedures in Brazil that would otherwise *facilitate* the discovery sought.  This, however, is not sufficient to convince the Court that Petitioners are seeking to circumvent "rules akin to privileges that *prohibit* the acquisition or use of certain materials." *Mees*, 793 F.3d at 303 n.3 (emphasis in original).

Respondents' final argument fares no better.  Respondents claim that bad faith and/or intent can be inferred because Petitioner did not first seek this discovery in Brazil.  The Court finds this argument wanting and declines to infer bad faith merely from Petitioner's choice to not first seek discovery in the Brazilian proceeding, where discovery is allegedly more restrictive. This is because there is no requirement that an applicant first attempt to obtain the discovery in the more restrictive foreign jurisdiction before resorting to § 1782. As such, the Court does not find Petitioner's application has been made in bad faith or that Petitioner has misused § 1782. This third this factor weighs in favor of Petitioner.

Fourth *Intel* Factor

The fourth *Intel* factor considers whether the subpoenas contain requests that are "unduly intrusive or burdensome[.]" *Intel Corp.*, 542 U.S. at 265.  "Section 1782 expressly incorporates the Federal Rules of Civil Procedure, and the fourth factor aligns with Rules 26 and 45." *In re Ex Parte Glob. Energy Horizons Corp.*, 647 F. App'x 83, 85-86 (3d Cir. 2016). As such, "assessment of the fourth factor is virtually

identical to the familiar 'overly burdensome' analysis that is integral to the Federal Rules." *Id.*

Respondents argue that the discovery sought is "intrusive and burdensome" because (1) the materials are not discoverable under Brazilian law; (2) the subpoenas seek communications that fall under a non-disclosure agreement between KCO and Multilog S/A; (3) the requests are a fishing expedition and "not tailored" to the proposed sale to Multilog S/A; and (4) "there is no factual basis for Applicant's claims and thus no basis for the demands made in the Subpoenas."

Respondents' first contention essentially repeats their argument that Brazilian law would not permit the discovery sought. For the reasons already discussed, the Court rejects this argument.

Turning to Respondents' assertions regarding materials allegedly subject to a non-disclosure agreement, the Court agrees with Petitioner that, to the extent Respondents have confidentiality concerns, the Court can address those alleged concerns by entering a confidentiality order to protect those documents that either are subject to a non-disclosure agreement or are otherwise confidential. *See In re O'Keeffe*, 646 F. App'x at 268-69 ("[T]he District Court acted within its discretion in finding that confidentiality concerns could be adequately addressed by protective orders or redactions."). Petitioner advises that it has no objection to such an Order, which would limit use of the documents to the Brazilian litigation or related litigation.

Next, Respondents contend that the communications sought by Request Nos. 1 and 2 of the subpoenas "are not tailored to the Transaction" that is the subject of the Brazilian litigation. ECF No. 7 at 19. These requests seek "[a]ll Communications with Multilog S/A or anyone acting on its behalf relating to the Multi Armazens Group and/or any member of the Henrich family" and "[a]ll Communications to which [Respondents] and Renan Henrich are parties." ECF Nos. 1-6, 1-7. Petitioner maintains that these requests are proper, asserting that because the first request seeks communications with Multilog S/A "relating to the Multi Armazens Group and/or any member of the Henrich family," it demands only documents discussing the proposed transaction and/or the Henrich family. Thus, Petitioner argues, the communications are clearly "relevant to any party's claim or defense," under Federal Rule of Civil Procedure 26(b)(1). Petitioner further argues that the second request seeks evidence relevant to Applicant's contentions that Respondents were communicating with Renan but not Ramon Henrich.

Additionally, the extent that these requests may be read to encompass material not relevant to the claims or defenses in the Brazilian action, Petitioner argues that an overbroad document request is not necessarily a reason to deny a § 1782 application outright. Indeed, under *Intel*, while "unduly intrusive or burdensome requests may be rejected," they may also be "trimmed." *Intel*, 542 U.S. at 245. With regard to these particular requests, the Court finds it would be more appropriate to do the latter and direct the parties to meet and confer to ensure that the scope of the requests reaches only relevant materials.

18

Finally, Respondents last argument attacks the merits of Petitioner's allegations and defenses in the Brazilian action. This is not an appropriate consideration on this discovery motion. Consequently, the Court finds this fourth factor weighs in favor of Petitioner.

## IV. CONCLUSION AND ORDER

For the foregoing reasons, the Court finds that a balancing of the *Intel* factors weighs in favor of Petitioners. Accordingly,

**IT IS** on this 31st day of July 2024

**ORDERED** that Respondents' motion to quash [ECF No. 7] is DENIED; and it is further

**ORDERED** that the parties are directed to meet and confer to address (1) the scope of Requests Nos. 1 and 2 in the subpoenas; and (2) the terms of an appropriate confidentiality order.


                                    *s/ Justin T. Quinn*
                                    JUSTIN T. QUINN
                                    United States Magistrate Judge

--terminates ECF No. 7